The B. B. SMITH COMPANY, Appellant,

v.

H. Glenn HUDDLESTON, Appellee.

No. 15689.

Court of Civil Appeals of Texas, San Antonio.

Dec. 29, 1976.

Johnson & Christopher, San Antonio, for appellant.

Edward Kliewer, III, Foster, Lewis, Langley, Gardner & Banack, San Antonio, for appellee.

BARROW, Chief Judge.

Appellant has perfected its appeal from a judgment entered after a jury trial decreeing specific performance of an earnest money contract dated February 28, 1975, whereby appellant agreed to sell to appellee approximately 23,075 square feet of land located at the corner of Windway Drive and Walzem Road in Bexar County. The principal issue in dispute is whether certain conditions contained in the contract were met so as to entitle appellee to enforce the contract.

Appellant, a Texas corporation, is a wholly owned subsidiary of Ray Ellison Industries which owns and develops real estate. The property in question adjoins Windcrest Shopping Center which was also owned by appellant. Appellant was engaged in negotiations with a prospective purchaser of the shopping center at the time it was contacted by appellee regarding purchase of the property in question. Appellee wants to build a small shallow-depthed retail center, and he learned in September 1974 that this property might be for sale. He contacted Dick Roberts, a real estate broker with Kittrell Realty Company, and had him check with Ellison Industries to see if the property was available. Kittrell Realty had handled prior transactions for appellee. Roberts and appellee had negotiations with Larry Klang, a real estate broker who had an exclusive listing of appellant's commercial property. These negotiations led to appellee and Roberts preparing the February 28 earnest money contract for submission by Klang to Ray Ellison, Jr., the president of the appellant. Ellison signed the contract, but only after changing condition 2 and deleting condition 7. Condition 2, as drafted by appellee, provided that First American Title Company would handle the closing and issue the guaranty policy. Ellison changed this provision to designate San Antonio Title Company.

Condition 7 provided in substance that Buyer and Seller should execute a mutually acceptable agreement for ingress and egress on their respective properties.[1] This condition was entirely deleted by Ellison on behalf of appellant, and the contract, as thus altered, was signed and returned to Roberts for delivery to appellee. On March 4, appellee sent to Roberts a check in the

---

1. "7) At closing, Buyer and Seller shall properly execute and record a mutually acceptable agreement which, among other things, provides for mutual, non-exclusive easements for ingress and egress and parking on their respective properties."

amount of $1,000.00 payable to the title company as the agreed earnest money. He also returned an initialed copy of the altered contract. These items were sent with a letter dated March 4 wherein he set forth several conditions to be performed in lieu of condition 7. He advised Roberts that in lieu of the signed ingress and egress agreement required by condition 7 before its deletion, it would be necessary to have an agreement or a condition in the deed of conveyance from appellant to the proposed buyer of Windcrest Shopping Center that the driveway approach to the center from Walzem Road be jointly used by both properties, and further, that such deed of conveyance stipulate that no obstructions would be constructed to prohibit free pedestrian and automobile traffic interchange on contiguous property lines. Appellee also asked for confirmation by appellant that the existing driveway into the shopping center, which was located on the east forty feet of the subject property, would be moved eastward so that the west boundary line of the driveway would be contiguous to the east boundary line of the subject property.

There is some dispute in the evidence as to when appellant learned of the conditions in appellee's letter of March 4. There was never any direct contact between appellee and Ellison in that all negotiations were between the real estate brokers, Roberts and Klang. However, the evidence is clear that appellant was unwilling to move the existing driveway. On April 9 appellant wrote appellee and advised him that appellant disapproved the plot plan and renderings submitted by appellee in accordance with conditions 5 and 6[2] and, therefore, the contract was null and void. Appellee had already spent considerable money on the

project and desired to carry out the contract. Accordingly, on May 16 appellee delivered to the title company his check for $115,501.68, being the balance of the purchase price. The check was deposited by the title company. This suit was filed by appellee seeking specific performance after appellant refused to furnish a deed and, instead, returned all sums paid by appellee to the title company.

The thrust of the dispute between the parties relates to the existing driveway leading from Walzem Road into the center of the shopping center. This driveway now traverses the east forty feet of the property in question and occupies about one-fourth of the land to be purchased by appellee. Its relocation would adversely affect the shopping center since the present location leads directly into the main section of the center. The shopping center represents a much greater investment of appellant, and, therefore, appellant was admittedly concerned from the outset with protecting this investment. Particularly so, as appellant was then in the process of negotiating for the sale of the shopping center.

Probably as a result of this concern, appellant was granted the unconditional right in conditions 5 and 6 to approve or disapprove the development plans of appellee. Appellant was expressly granted the right to approve or disapprove the plot plan of the subject property including the exact location of the building, parking, and driveway facilities. In the event of appellant's disapproval of appellee's plot plan or renderings, it was agreed that the contract should be null and void and of no force whatsoever. The proposed plot plan was not approved by appellant because the building was located on the existing driveway and would require relocation of the

**2.** "5) Prior to closing, Buyer shall submit to Seller a plot plan of subject property showing the dimensions and exact location of any buildings and parking and driveway facilities, signs and landscaping to be constructed on subject property. Seller shall have the right to approve or disapprove of said plot plan. If Seller disapproves thereof, this Contract shall be null and void and of no force or effect whatsoever."

"6) Prior to closing, Buyer shall submit to Seller a rendering showing the elevation and exterior appearance of the front, side, and rear of any buildings to be constructed on subject property and a statement of the proposed occupancy and use thereof. Seller shall have the right to approve or disapprove of said plot plan and said occupancy and use. If Seller disapproves thereof, this Contract shall be null and void and of no force or effect whatsoever."

driveway. Appellant also asserts that only a front elevation was furnished contrary to condition 6, but it is admitted by Ellison that the contract fell through because of the proposed location of the building on the driveway.

Only one issue was submitted to the jury and, by its verdict, the jury found that appellant failed to act in good faith in refusing to complete the sale of the property to appellee.[3] Judgment was entered on this verdict ordering specific performance of the earnest money contract of February 28, 1975.

Appellant complains of this judgment by nine points of error. It urges by three points that there was no valid contract because there was not a meeting of the minds since appellee never approved the contract as changed by appellant prior to its execution. Appellant contends that appellee's letter of March 4 presented a counter-proposal which it never accepted. Furthermore, appellant urges that conditions 5 and 6 were never met in that appellee did not supply complete plans for appellant's approval. Finally, it is asserted that the agreement did not satisfy the Statute of Frauds because there was not a complete contract. Appellant's other six points relate to the issue of good faith. It urges that there is no evidence or insufficient evidence to support the jury finding. Alternatively, it complains of the action of the trial court in overruling appellant's objections to the question as submitted and to the definition of good faith. Appellant asserted by its objections that the issue as submitted was too broad and that the proper question was whether it had acted in bad faith in not approving appellee's proposed plot plan.

■ The contract, which was drawn by appellee, is unusual due to the broad power granted appellant to approve or disapprove the plans of appellee. Condition 5 clearly and unequivocally granted appellant the right to disapprove the location of the building to be erected by appellee. Appellant also had the absolute right to control location of the driveway. It is apparent that appellant was concerned from the outset with protecting its large investment in the shopping center. Appellant deleted condition 7 before the contract was signed and thereby refused to be bound to even enter into a mutually agreeable easement for ingress and egress. The counter-proposal made by appellee in his letter of March 4 was not acceptable to appellant since it called for the relocation of the existing driveway. Appellee testified that he indicated his willingness to accept the contract as modified by appellant when he tendered the full payment price to the title company on May 16. This was long after the plot plans had been rejected by appellant. Although appellee testified at the trial that the location of the driveway was immaterial to him, he never indicated this to appellant before the suit was filed. We conclude that the earnest money contract of February 28, 1975 became null and void by its own terms.

■ Appellee urges that the judgment for specific performance is supported by the jury finding that appellant did not act in good faith in rejecting the contract. We agree with appellant that the inquiry should have been limited to the question of whether appellant did not act in good faith in rejecting the plot plan proposed by appellee. This was the right granted it by condition 5 of the contract. However, there is no evidence in the record to raise such issue of lack of good faith.

The courts of this State have held that where the duty to perform a contract is conditioned upon the personal approval of one of the parties, that party must act in good faith in exercising his judgment. *Black Lake Pipe Line Co. v. Union Con-*

---

**3.** "*Question No. 1* : Do you find from a preponderance of the evidence that the B. B. Smith Company failed to act in good faith in refusing to complete the sale of the property described in Exhibit No. 3 to H. Glenn Huddleston?

Answer 'We do' or 'We do not.'
We, the jury, answer: *We Do.*
You are instructed that an individual fails to act in good faith if his actions are arbitrary, capricious or unreasonable."

*struction Co.*, 538 S.W.2d 80 (Tex.1976); *Atomic Fuel Extraction Corp. v. Slick's Estate*, 386 S.W.2d 180 (Tex.Civ.App.—San Antonio 1964, writ ref'd n.r.e.).

Appellee urges that the issue of good faith was raised in that there was no reasonable basis for appellant to disapprove appellee's plot plan. Appellee points out that Ellison admitted that he was primarily concerned with the objection to the plot plan made by the prospective purchasers of the shopping center because the sale of the center involved substantially more money. This contention overlooks the fact that appellant had this concern from the outset and undoubtedly accounts for the broad powers granted appellant under the terms of the contract as drafted by appellee and his broker. This concern was recognized by appellee in that after receiving appellant's rejection letter of April 9, appellee engaged in extensive negotiations with the prospective purchasers in an unsuccessful attempt to work out a mutual agreement for ingress and egress. The only other evidence of bad faith pointed out by appellee is over the important question of which party should bear the expense of the driveway. The cost of relocating the driveway would be relatively insignificant; however, the value of the land upon which same is located is significant. Furthermore, a relocation of the existing driveway would adversely affect the shopping center in that there would be a jag in the driveway leading into the center. For these important reasons, there never was an agreement by appellant to relocate the driveway, and therefore, its unwillingness to do so cannot be considered as evidence of bad faith.

The trial court erred in granting the judgment for specific performance. We therefore reverse said judgment and render judgment that appellee take nothing by its suit.